## 23154. THOMPSON *v.* THE STATE.

Decided July 21, 1933.

*J. A. Hixon, L. B. West, J. H. Fletcher, T. P. Edwards,* for plaintiff in error.

*R. A. Patterson, solicitor-general, H. A. Wilkinson, Olin Hammock, Hooper & Hooper,* contra.

Guerry, J. J. G. Thompson was arrested at the May term, 1932, of the superior court of Randolph county charged with "making false entries on the books of Shellman Banking Company." On November 10, during the regular November term of the court, a petition was filed by the solicitor-general, alleging that competent grand jurors and petit jurors could not be obtained in Randolph county, and the parties had not been able to agree on a county to which the case might be transferred. The court passed an order transferring the warrant and "all matters arising out of the failure

of the Shellman Banking Company" to Terrell county for investigation. On December 1, the grand jury of Terrell county returned an indictment for embezzlement against Thompson, alleging the various ways in which the embezzlement was consummated and secreted. The trial occurred December 3d, and resulted in a verdict of guilty. The indictment was attacked on various grounds, and there was a motion for continuance.

■ The first headnote needs no further discussion. However, we cite the following authorities: *Billing* v. *State*, 165 *Ga.* 55 (139 S. E. 877); *Hall* v. *State*, 7 *Ga. App.* 115 (66 S. E. 390); *Belts* v. *State*, 66 *Ga.* 508; *Snead* v. *State*, 38 *Ga. App.* 797 (145 S. E. 919); *York* v. *State*, 42 *Ga. App.* 453 (34) (156 S. E. 733).

■ It was insisted that the motion for continuance should have been granted because of insufficient time to properly produce evidence and prepare the defense for the trial of the case. The defendant had been arrested "for making false entries in the bank's books" the preceding May. On November 10, at the regular November term of Randolph superior court this warrant and "all matters arising out of the failure of the Shellman Banking Company" were transferred to Terrell superior court. The fact that no warrant for embezzlement had been sworn out prior to the transfer of the matter to another county, where it also appeared that the defendant was under arrest charged with a crime growing out of the same transaction that the embezzelement charge grew out of, affords no ground for such a continuance because of an indictment returned for embezzlement, rather than "false entries." Especially is this true where the indictment for embezzlement charges that the crime is committed and secreted by the same false entries. Although motions for continuance at the first term do not stand on the same footing as those made at a subsequent term, we can see no particular advantage it would have given the defendant to have a continuance. We can not say that the trial judge erred or abused his discretion in overruling the motion. See, in this connection, *Ivey* v. *State*, 154 *Ga.* 63 (113 S. E. 175).

■ We shall now discuss the sufficiency of the indictment here demurred to. It in proper manner named the defendant as being such an officer of the Shellman Banking Company as to be included in the section of the banking laws of 1919 defining embezzlement, and alleged that by virtue of such office he was entrusted with the

funds, monies, etc., of the said bank, and that he had wilfully embezzled, abstracted, and misapplied such monies and funds with the purpose and intent to injure and defraud said bank, and had injured and defrauded said bank in the sum of $20,854.28. The time of the alleged abstraction, embezzlement, and misapplication was also alleged. It was also alleged that such abstraction, embezzlement, and misapplication were accomplished and effected by said Thompson by drawing checks and drafts on said bank, by making false entries on the books and records of said bank, by removing, misplacing, and destroying the records of said bank, by making false reports of the condition of said bank, by taking notes or other securities and credits from the proper files of such bank, by concealing loans made to himself and others doing business with such bank, by omitting to make material entries in the books and records of said bank or in the pass-book of depositors thereof, all being done by said Thompson to injure and defraud said bank. The demurrer in substance was that said indictment is "insufficient in law to charge this defendant with any crime, because of uncertainty and indefiniteness and want of sufficient particularity in alleging and failing to allege what acts or act of defendant amounted to and constituted the embezzlement charge," also in failing to set forth the amount and value of the securities, funds, etc., alleged to have been misappropriated, and in not alleging any particular date when anything of value was fraudulently misappropriated, and in not particularizing as to the alleged false entries, and in not attempting to particularize as to the commission of each alleged act complained of. In 20 Corpus Juris, 406, we find the following language: "In its larger sense embezzlement is the fraudulent appropriation of another's property by a person to whom it has been entrusted or into whose hands it has lawfully come." The indictment here alleges the position of trust with the bank, the entrusting of the money, funds, etc., belonging to it, and the embezzlement, abstraction, and misapplication thereof. It charges the means by which the misappropriation took place and was concealed.

In the case of *Jackson* v. *State,* 76 *Ga.* 551, 574, it was said: "Had the indictment simply stated the amount embezzled at divers times during the period covered by these speculations, and set forth the means resorted to in order to embezzle, steal, secrete, and fraudulently take and carry away the money belonging to this corpora-

tion, and which came into the hands of the defendant as its president, to whose custody it was committed, and who had, by virtue of his office, these funds in his custody, etc., and that he did thus embezzle, etc., the entire amount converted, it would, under the Code, have been sufficient, and would certainly have been preferable to one setting out, with minute and unnecessary particularity, the circumstances attending the transaction from its commencement to its consummation. . . The purpose of our statute is to avoid just such complications, and to afford a simple and straightforward method of establishing guilt, by abolishing the particularity in pleading required by the common law and declaring that every indictment or accusation of the grand jury shall be deemed sufficiently correct which states the offense in the terms and language of the Code, or so plainly that its nature may be easily understood by the jury. Code, § 4628." In larceny after trust, which is closely related to embezzlement, it is not required that the subject-matter of the larceny be described with the same particularity as in simple larceny. In *Sanders* v. *State*, 86 *Ga.* 717 (12 S. E. 1058), it was held that an indictment for larceny after trust which charges the misappropriation of "fifteen head of beef cattle" entrusted to the defendant is a sufficient description of the property converted. In simple larceny such would not have been the case. The object to be gained by a description or particularization of the stolen thing or transaction is to individualize the thing or transaction. The jury should be able to see, from the allegations of the indictment, the various alleged means by which the embezzlement is accomplished or secreted, without particularizing every transaction. See *Camp* v. *State*, 31 *Ga. App.* 737 (122 S. E. 249), and cit. In *Jackson* v. *State*, supra, it was said: "To specify particularly what money was received and embezzled would be impossible, and such a requirement would render the statute ineffectual." In the case of *Hays* v. *State*, 114 *Ga.* 25 (40 S. E. 13), it was said: "Where in such an indictment it was alleged that the accused made fraudulent reports to the corporation of the money collected for it by him, and fraudulently concealed from it the true amounts so collected, with intent to embezzle, etc., *it was not necessary to state the nature and character of the alleged false and fraudulent reports.*" (Italics ours.) It was not error for the court to overrule the demurrer on this ground.

██ The rulings stated in the 4th and 5th headnotes need no further elaboration.

█ The alleged disqualification of one of the trial jurors because of relationship to a depositor in the bank is not shown. The fact that a woman who was kin to the juror within the prohibited degree was a member of a missionary society of a Baptist church, and had contributed to the funds of the society, and that these funds had been sent to the association to which that church belonged, and the treasurer of the association had such funds deposited in her individual name in the bank of which the defendant was an officer, is too remote as to interest to disqualify the juror from sitting on the trial of the case. The evidence supports the verdict, and we find no reason why the judgment of the trial court should be reversed.

*Judgment affirmed.* *Broyles, C. J., concurs.*

MacIntyre, J., concurring specially. Conceding that the demurrer raises the question of particularity of description of the funds, securities, and credits, charged in the indictment as having been embezzled, since there was no evidence introduced with reference to funds, securities, and credits, and all the evidence dealt with the embezzlement, abstraction, and wilful misapplication of *money* and the means resorted to in taking the money, I think the overruling of the demurrer was harmless error. See *Hall* v. *State*, 8 *Ga. App.* 747 (70 S. E. 211); Hudson v. State, 93 W. Va. 435, 117 S. E. 112.