### 30606. JARVIS v. THE STATE.

DECIDED SEPTEMBER 13, 1944. REHEARING DENIED OCTOBER 19, 1944.

*C. E. Moore,* for plaintiff in error.

*Lindley W. Camp,* solicitor, *John A. Boykin,* solicitor-general, *Durwood T. Pye,* contra.

GARDNER, J. C. E. Jarvis Jr. was convicted in the criminal court of Fulton County on an accusation containing eleven counts, charging him with having violated the usury laws of this State. His conviction was upheld by this court. *Jarvis v. State,* 69 *Ga. App.* 326 (25 S. E. 2d, 100). A motion to set aside the judgment was denied by Hon. Jesse Wood, presiding judge of the criminal court. The writ of certiorari was granted by the superior court. On the hearing the writ was overruled and dismissed, and Jarvis excepted.

The contention now before this court is, that the affidavit on which the information or accusation was founded was void, on the ground that no legal oath was administered to the prosecutor; that since the affidavit was void the information or accusation founded thereon was void; and that for these reasons the criminal court of Fulton County did not acquire jurisdiction of the subject-matter, and all proceedings resulting in the conviction and sentence were nugatory and of no effect. The act of 1890-91 (Ga. L. 1890-91, vol. 2, p. 937, sec. XI), provides: "That criminal prosecutions in said court may be instituted by written information or accusation, plainly and distinctly setting forth the offense charged, containing the name of the prosecutor and signed by the solicitor-general, and founded on affidavit." There were a number of counts in the accusation. All were identical, except that the transactions in them set forth dealings with parties other than the prosecutor. For this reason we will set forth only one of the counts, which is as follows: "State of Georgia, County of Fulton: Came in person before me H. L. Bailey who being duly sworn deposes and says on oath that from the best of his knowledge and belief, C. E. Jarvis, trading as Salary Investment Company, is guilty in the offense of: Misdemeanor. Count 1. That the said C. E. Jarvis Jr., trading as Salary Investment Company, in said County of Fulton on the 17th day of January, 1941, did engage in the business of lending money in the amounts of $300 (three hundred dollars), and less, and did charge, contract for, and receive a greater rate of interest than eight per centum (8) per annum on said loans and for the use of said money from one or more of the following persons, to wit: H. L. Bailey, Edward Johnson, Sam A. Cannon, Parks S. Jones, John D. Leverett, Clifford F. Thigpen, and William G. Perry, without having a license from the State Superintendent of Banks,

contrary to the laws of said State, the peace, good order, and dignity thereof. . . Sworn to and subscribed before me this, the 15th day of June, 1941. [Signed] Homer L. Bailey. [Witnessed by] L. C. Forbes, N. P., Ga. State-at-large. . . this accusation is based on the above attached affidavit, June term, 1941. Homer L. Bailey, prosecutor. Bond Almand, solicitor, criminal court of Fulton County."

Thus it appears on the face of the information or accusation that it is regular in every respect and is a full compliance with the provisions of the act of 1890-91. This being true, it must as a matter of law be presumed that the criminal court of Fulton County thereby acquired jurisdiction of the subject-matter. The Code, § 38-113, reads in part as follows: "Presumptions are either of law or of fact. The former are conclusions and inferences which the law draws from given facts." Thus it may safely be said that the affidavit on its face makes out a prima facie case in favor of the jurisdiction of the court concerning the subject-matter involved. *American Tie & Timber Co.* v. *Tyler,* 18 *Ga. App.* 640 (4) (90 S. E. 86). In *Gibson* v. *Gibson,* 54 *Ga. App.* 187, 188 (187 S. E. 155), this court, citing approvingly other decisions, said: "Bare presumptions of law give way to testimony, which may shift the burden of proof or of proceeding to the opposite party, and he is not then entitled to prevail upon the presumption alone. . . Whether the presumption has been successfully rebutted with testimony is ordinarily a question for the jury. . . Where there is proof of facts or circumstances to support the presumption, and the evidence as a whole is conflicting, a verdict in favor of either party will not be disturbed upon general grounds." The presumption that a proper oath was administered to the prosecutor prevails and sustains the information or accusation until dethroned by sufficient evidence to rebut the presumption. It might be well now to call attention to the essentials of a valid affidavit. In *Miller* v. *Caraker,* 9 *Ga. App.* 255, 258 (71 S. E. 9), the court stated: "It will be noticed that in this form which is commonly used, the statement that the affiant was duly sworn is not the statement of the affiant, but on its face purports to be the statement of the attesting officer. It is substance, not mere form, that is to be observed. The affidavit is therefore good, provided (1) that there is a written statement; (2) that the oath is administered to the

affiant; and (3) that he signs the statement. The verification of the magistrate to the fact that the oath was administered may as completely appear from the jurat as from the mere introductory clause preceding the written statement of the facts sworn to." In the instant case it is conceded that the affidavit was in writing and signed by H. L. Bailey as affiant. But it is contended that the testimony of Bailey on the trial of the main case is sufficient, as a matter .of law, to overcome the presumption that a lawful oath was administered to him. The testimony referred to, which was the only evidence on the issue, is as follows: "When I went before the grand jury they put me on oath there, and I testified before the grand jury. They had an indictment drawn there upon which I was testifying, and that indictment was in accordance with what I had told the solicitor-general; and I testified to the facts set out in the indictment here before the grand jury. I first stated that what I stated here was the truth, and whatever I told them was the truth. I don't know whether this indictment was before them then or not. I know they drew an indictment in accordance with what I said. As to whether I didn't later make an affidavit before Mr. L. C. Forbes—I don't know who Mr. Forbes is. I talked to Mr. Bond Almand about it, and he talked to me at considerable length. I signed that paper there. I didn't know what was in it, but I did care. I didn't hold up my right hand and swear to it, and I didn't know Mr. Forbes was a notary public. I knew he was an assistant to Mr. Almand. I was in that room there behind this courtroom then. I think Mr. Almand's office is over to the left of that, but I don't know. Mr. Almand got me to sign that, and he was present when it was signed. He did not read that whole thing there to me." Before analyzing the evidence above set forth we might take note of the law concerning the formality of an oath. In this connection it might also be well to note that the oath here required need not be positive, but may be made only to the best of the affiant's knowledge and belief, the same as for the issuance of a warrant. Code, § 27-104; *Thomas* v. *State,* 91 *Ga.* 204, 207 (18 S. E. 305). In *Winn* v. *Miller,* 136 *Ga.* 388, 390 (71 S. E. 658), the Supreme Court held: "An affidavit 'to the best of his knowledge and belief' commits the affiant to almost nothing." While we do not mean to hold that where an affidavit is required the affiant nevertheless should not have a lawful oath administered

to him, but for the purpose of further discussing the evidence on this question we mention this fact. In *McCain* v. *Bonner*, 122 *Ga.* 842, 846 (51 S. E. 36), the Supreme Court said: "It is not essential . . . that affiant should hold up his hand and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what is done is all that is necessary to complete the act of swearing. 2 Cyc. 16. The record discloses testimony from which a jury might well conclude that both the magistrate and the affiant understood that an oath was being administered and taken. There was evidence from which the contrary inference might be drawn, but this was purely an issue of fact." See also *Mitchell* v. *Masury*, 132 *Ga.* 360 (64 S. E. 275).

Let us analyze more closely the record which prima facie sustains the presumption that the court properly had jurisdiction of the subject-matter, and see whether the evidence to the effect that no lawful oath was administered is as a matter of law sufficient to overcome the prima facie case established by such presumption. In the first instance we have the jurat of the attesting officer that Bailey was sworn. In addition, we have a statement over the signature of the solicitor, as State's attorney, to the effect that the accusation is based upon the affidavit. The presumption that these officers did their duty is recognized in law as being sufficient to establish the fact, prima facie, that a proper oath was administered. The burden rested on the defendant to overcome this presumption. In the course of the opinion in *Britt* v. *Davis*, 130 *Ga.* 74, 77 (60 S. E. 180), the Supreme Court used these words: "The law has not prescribed any exact formula of words or specific ceremony which must be used in order to constitute a valid administration of an oath. Certain forms of expression are generally followed. But if the substance is present, a lack of literal compliance with form will not invalidate the oath." In the second instance, did the evidence of Bailey, as a matter of law, overcome this presumption? After giving certain testimony concerning his appearance before the grand jury the witness was asked if he did not later make an affidavit before Mr. L. C. Forbes, and he answered: "I don't know who Mr. Forbes is. I talked with Mr. Bond Almand about it and he talked with me at considerable length. I signed that paper there. I didn't know what was in it, but I did care. I didn't hold up my hand and swear to it, and I

didn't know Mr. Forbes was a notary public. I knew he was an assistant to Mr. Almand. I was in that room there behind this courtroom then. I think Mr. Almand's office was there to the left of that, but I don't know. Mr. Almand got me to sign that paper and he was present when it was signed. He did not read that whole thing to me." This evidence appears on its face to be self-contradictory, equivocal, inconsistent, and general in its nature. The witness testified in one instance that he did not know Mr. Forbes, and in another he stated that he did know that Mr. Forbes was an assistant to the solicitor, Mr. Almand. He testified that Mr. Almand talked to him at considerable length concerning the transaction. He must have known from his having appeared before the grand jury, and having discussed the matter at considerable length with Mr. Almand and Mr. Forbes, his assistant, that he (the witness) was swearing to the contents of the affidavit. At the time he signed the affidavit he was on the threshold of the courtroom. He nowhere states in his testimony that he did not swear to the contents of the affidavit. The nearest he comes to that essential point is that he did not "hold up his hand and swear to it." The law does not require that he hold up his hand and swear to it. Another inconsistent statement is: "I signed that paper. I didn't know what was in it, but I did care." Then later he states: "He [meaning Mr. Almand] did not read that whole thing there to me." The record does not reveal what part was read to him and what part was not read to him. The accusation contains eleven counts, and it was not necessary that the solicitor or the notary public read it to him verbatim. It nowhere appears that the substance of each count and the substance of the entire affidavit were not read to him. The presumption is that the officers did their duty and read the affidavit in substance to him or informed him in substance what was contained therein. In view of the above testimony and the circumstances concerning the whole transaction pertaining to the issue, it does not appear as a matter of law that it was sufficient to overcome the presumption that Bailey was legally sworn concerning the contents of the affidavit. It presumptively and legally appears that the accusation was based on a proper affidavit. Since this is true, the court had jurisdiction of the subject-matter. It follows that the case should not be reversed for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

## ON MOTION FOR REHEARING.

In the motion for rehearing counsel state: "Movant contends that the court, in holding and deciding that the jurisdiction of the subject-matter is a jury question, has overlooked the case of *Thompson* v. *State,* 47 *Ga. App.* 229 (4) (170 S. E. 328), in which it is held that the jurisdiction of the subject-matter is for the court and not for the jury." We have carefully reread the original opinion in the light of this contention. In that opinion we did not intend to give the impression that jurisdiction was a jury question. The motion to set aside the judgment in the instant case was based on evidence which was brought out on cross-examination by counsel for the appellant. Attention was not called to this issue during the progress of the main trial, and the court did not submit it to the jury as a question for them to decide. The instant case is a motion to set aside the verdict and judgment on the ground that this evidence shows that the whole proceeding was void because it showed that no lawful oath was administered, and therefore the whole proceeding was void because the court did not have jurisdiction of the subject-matter. Then it was that the court and not a jury decided that the evidence which appellant relied on was not sufficient to overcome the presumption of law that a legal oath was administered to the witness. We think the trial court was right, but this does not mean that the court submitted this particular issue to a jury. Counsel evidently placed an erroneous construction on our judgment from quotations from certain decisions dealing with the presumption of law in certain cases where the facts did go to the jury. The principle is the same, whether the issue of fact is to be decided by the jury or by the court.

*Rehearing denied. Broyles, C. J., and MacIntyre, J., concur.*